UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ANDREW KAMPURIES,                           :
                                            :
    *Plaintiff,*                          :
                                            :
          v.                         :          No. 3:25-cv-2124 (VAB)
                                            :
LYFT, INC.,                                 :
                                            :
    *Defendant*.                          :

## RECOMMENDED RULING

This matter was referred to the undersigned for initial review of the Complaint pursuant to 28 U.S.C. § 1915. *See* ECF 10. For the reasons below, I recommend that Plaintiff's Motion for Leave to Proceed *in forma pauperis* be DENIED and the Complaint, ECF 1, be DISMISSED with leave to amend.

## I.    MOTION FOR LEAVE TO PROCEED *IN FORMA PAUPERIS*

"Under 28 U.S.C. § 1915(a)(1), a court may authorize the commencement of a civil action without prepayment of fees and costs provided the plaintiff submits sufficient documentation demonstrating that [he] is 'unable to pay' or 'give security therefor[.]'" *Rahimi v. Secretary of Navy*, No. 3:19-cv-1852 (JAM), 2019 WL 6529458, *2 (D. Conn. Dec. 4, 2019). The decision to grant or deny such leave rests in the court's discretion. *Patterson v. Rodgers*, 708 F. Supp. 2d 225, 230 (D. Conn. Apr. 28, 2010).

A person seeking leave to proceed *in forma pauperis* must submit an affidavit containing a statement of all assets and showing that he is unable to pay the filing fee. 28 U.S.C. § 1915(a). Plaintiff's submission here does not demonstrate an inability to pay. His financial statement includes duplicate and inconsistent entries but appears to aver that his monthly income includes $5500 from a pension, $1400 from Social Security, and $1000 in self-employment income. ECF

1

2 at 1–2.  As for monthly liabilities, the biggest listed liability is $1218 in car payments, including for a 2025 Mazda CX-50.  *Id.* at 3.  Plaintiff also avers that he spends $1000 per month on recreation.  *Id.* at 5.  Meanwhile, he pays only $800 in monthly rent.  *Id.*

Although a litigant need not be "absolutely destitute" to proceed *in forma pauperis*, he still must show that he "cannot because of his poverty pay or give security for the costs and still be able to provide himself and dependents with the necessities of life."  *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339 (1948).  Based on all the information in his affidavit, I conclude that he does not meet this standard, and I recommend that his Motion for Leave to Proceed *in forma pauperis*, ECF 2, be DENIED.

## II.  INITIAL REVIEW OF THE COMPLAINT

### A.  Standard of Review

Pursuant to § 1915(e), the district court must review *in forma pauperis* complaints and dismiss any that "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).  The court liberally construes pleadings and briefs submitted by self-represented plaintiffs, "reading such submissions to raise the strongest arguments they suggest."  *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156-57 (2d Cir. 2017).  If a *pro se* complaint is dismissed on initial review, the court should grant leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim."  *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999).

### B.  Allegations and Claim

The Complaint brings a single count for breach of the implied covenant of good faith and fair dealing under Connecticut law.  ECF 1.  Plaintiff has also submitted various exhibits (ECF 1-

3, 1-4, 2-1, 11, 13, 14, 15) and a written letter to the Court (ECF 4), which I have considered as part of his pleading.[1]  He alleges as follows.  Plaintiff has completed over three thousand rides driving for Lyft over approximately eight years, including at the airport.  ECF 1 at 1.  Initially, Lyft had defined rules for the airport queue, including incentive structures and bonus compensations, but then unilaterally changed the rules.  *Id.* at 2.  The Complaint does not clearly describe the prior compensation structure, when it changed, how it changed, or how the current structure works, but Plaintiff alleges that he now waits hours to get low priced rides with no bonuses like before, and Lyft now takes more than 50% of the ride after tips.  ECF 4.  If Plaintiff does not take a ride he is penalized, so he cannot turn down unprofitable rides.  *Id.*  If he accepts a rider that suddenly cancels, then he must go to the back of the queue.  *Id.*  Plaintiff has suffered diminished access to airport pickups, reduced earnings, and increased financial strain.  ECF 1 at 2.  Plaintiff seeks compensatory damages and injunctive relief to be "grandfathered in" to the old platform and rules with the seniority advantages that he used to enjoy.  *Id.* at 3; ECF 4.

## C. Discussion

### 1. Subject matter jurisdiction

Federal courts have limited jurisdiction, *Lyndonville Sav. Bank & Tr. Co. v. Lussier*, 211 F.3d 697, 700 (2d Cir. 2000), and may only hear cases that raise a federal question or where the parties are citizens of different States and the amount in controversy exceeds $75,000.  *See* 28 U.S.C. § 1331 (federal question jurisdiction), § 1332 (diversity jurisdiction).  "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."  Fed. R. Civ. P. 12(h)(3).  Here, the Complaint does not raise a federal question, and

---

[1] When determining the sufficiency of pleadings, the district court may consider "facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."  *Wozar v. Campbell*, 763 F. Supp.3d 179, 192 (D. Conn. 2025).

although it alleges diversity of citizenship between Plaintiff (Connecticut) and Lyft (California), it fails to plausibly allege that the amount in controversy exceeds $75,000.

The party invoking diversity jurisdiction must establish the amount in controversy "to a reasonable probability." *Tongkook Am., Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 784 (2d Cir. 1994) (quotation marks omitted).  Although there is "a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy, this presumption can be overcome when it is a legal certainty that the jurisdictional threshold cannot be met." *Adams v. Netflix, Inc.*, 726 F. App'x 76, 77 (2d Cir. 2018) (summary order) (quotation marks omitted).

Plaintiff explicitly alleges that the amount in controversy exceeds $75,000, ECF 1 at 1, but such a conclusory allegation is not entitled to a presumption of truth. *Wood v. Maguire Auto., LLC*, 508 F. App'x 65 (2d Cir. 2013) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009)); *see also Lapaglia v. Transamerica Cas. Ins. Co.*, 155 F. Supp. 3d 153, 155-57 (D. Conn. 2016) (Meyer, J.) (concluding that *Twombly/Iqbal* plausibility standard applies to amount in controversy).  Nor do the other exhibits Plaintiff submitted establish losses in the required amount to a reasonable probability.  One attachment shows examples of Lyft deducting more than 50% of the passenger payment for Plaintiff's driving services,[2] but such anecdotal information does not establish an amount of total loss.  ECF 1-4 at 1-3; ECF 14.  Plaintiff also has attached a police report indicating that his car was stolen in 2024, ECF 1-4 at 4–5, and a sales agreement showing he bought a new car in 2025 for $47,331 after trade-in credit, ECF 1-4

---

[2] For example, he made $34.70 on a passenger's payment of $67.29 for a 70-minute drive; $42.07 on a payment of $80.95 for a 77-minute drive; and $8.87 on a payment of $32.94 for a 23-minute drive.  ECF 14.

at 7, but there is no plausible allegation that Lyft's pay reductions caused Plaintiff's car to be stolen or forced him to buy a new car.  Additionally, Plaintiff has submitted his 2024 tax return (Form 1040) and 1099-K forms for a four-year period from 2022 to 2025.  ECF 2-1, 11, and 13. The purpose of these submissions is unclear.  There is no entry on the face of the tax return that can be construed as Lyft-related earnings.  As for the 1099s, they show that Plaintiff received payments from Lyft of $49,244 (2022), $27,103 (2023), $23,347 (2024) and $33,630 (2025). ECF 13.  But Plaintiff has not identified when Lyft allegedly changed its compensation structure, so the Court cannot decipher what tax years might be relevant to Plaintiff's claim.  Even assuming the 1099s are meant to imply that the compensation structure changed after 2022, such that Plaintiff's reduction in compensation could be calculated by subtracting earnings in subsequent years from the 2022 baseline, the total decrease does not exceed $75,000.[3]  And even if that calculation did exceed $75,000, it still could not be reasonably construed as Plaintiff's actual loss because the 1099s do not account for expenses—such as gas and vehicle maintenance—that would have offset those gains.[4]  In sum, the exhibits Plaintiff has submitted do not establish to a reasonable probability that Plaintiff has suffered losses exceeding the jurisdictional threshold.

### 2. Failure to state a claim

Even if the Court had subject matter jurisdiction to hear this case, I would recommend dismissal for failure to state a claim on which relief may be granted.  To determine whether a complaint fails to state a claim, the court assesses whether the complaint alleges "enough facts to

---

[3] ($49,244 - $27,103) + ($49,244 - $23,347) + ($49,244 - $33,630) = $63,652.

[4] Presumably, line 8 of Form 1040 would show any net additional income after expenses as calculated on Schedule C (1040) and Schedule 1 (1040).  Those schedules are not included in the pleadings but line 8 on Plaintiff's 2024 tax return, for example, lists only $151.  ECF 2-1 at 2.

state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff's claim is for breach of the covenant of good faith and fair dealing. The essence of that cause of action is that a defendant "impede[d] the plaintiff's right to receive benefits that he or she reasonably expected to receive under [a] contract . . . in bad faith." *Capstone Bldg. Corp. v. Am. Motorists Ins. Co.*, 308 Conn. 760, 795 (2013). "Bad faith in general implies both actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive." *Id.*

Here, the allegations in the Complaint are too sparse to permit the reasonable inference that Plaintiff had contractual rights that Lyft impeded bad faith. The Complaint does not clarify what the compensation terms were supposed to be, whether there were any limitations on Lyft's right to changes to compensation structure, what the changes were, or how Lyft made such changes with a dishonest purpose (as opposed to being permissible business changes that Plaintiff simply did not prefer). By way of comparison, in a recent class action in the District of New Jersey challenging Lyft's driver compensation structure, the court found that the plaintiffs failed to plausibly allege the existence of contractual obligation and bad faith performance thereof even though their complaint provided significant detail regarding the alleged agreement, including copies of the written compensation policies at issue. *See Nieves v. Lyft, Inc.*, No. 17-cv-6146 (FLW), 2018 WL 2441769, at *17 (D.N.J. May 31, 2018) (granting motion to dismiss).

6

Consequently, I conclude that Plaintiff's allegations are insufficient to state a plausible claim of breach of the implied covenant of good faith and fair dealing.

### D.  Conclusion

For the foregoing reasons, I recommend that the Complaint be DISMISSED for lack of subject matter jurisdiction and failure to state a claim, but that Plaintiff be granted leave to amend in case he can allege sufficient factual matter to cure the defects described above.

This is a recommended ruling.  *See* Fed. R. Civ. P. 72(b)(1).  **Any objections to this recommended ruling must be filed with the Clerk of the Court on or before April 6, 2026.** *See* Fed. R. Civ. P. 72(b)(2) (objections to recommended ruling due fourteen days after being served), and 6(d) (three days added where service is by mail).  Failure to object by that date will preclude appellate review.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72 and 6(a); D. Conn. L. Civ. R. 72.2; *Small v. Secretary of H.H.S.,* 892 F.2d 15 (2d Cir. 1989) (per curiam); *F.D.I.C. v. Hillcrest Assoc.*, 66 F.3d 566, 569 (2d Cir. 1995).

**SO ORDERED**, on this 20th day of March, 2026, at Bridgeport, Connecticut.

*/s/ S. Dave Vatti*
Hon. S. Dave Vatti
United States Magistrate Judge

7